UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

**AUDREY K.,**

    **Plaintiff,**

v.

**KILOLO KIJAKAZI,**
**Acting Commissioner of Social Security,**

    **Defendant.**

Case No. 2:19-cv-20020
Magistrate Judge Norah McCann King

**OPINION AND ORDER**

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Audrey K. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application.[1] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court reverses the Commissioner's decision and remands the action for further proceedings.

**I.   PROCEDURAL HISTORY**

On March 9, 2016, Plaintiff filed an application for benefits, alleging that she has been disabled since April 1, 2015. R. 92, 114, 176–77. The application was denied initially and upon reconsideration. R. 118–20, 122–26. Plaintiff sought a *de novo* hearing before an administrative

---

[1] Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as Defendant in her official capacity.

1

law judge. R. 127–28. Administrative Law Judge ("ALJ") Ryan Johannes held a hearing on April 24, 2018, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 38–75. In a partially favorable decision dated December 6, 2018, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act prior to July 28, 2017, but that she became disabled on that date and continued to be disabled through the date of the decision. R. 16–28. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on September 8, 2019. R. 1–6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On September 2, 2020, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuantatto 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 10.[2] On the same day, the case was reassigned to the undersigned. ECF No. 11. The matter is now ripe for disposition.

## II.     LEGAL STANDARD

### A.     Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565

---

[2] The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

2

(1988) (citation and internal quotations omitted); *see K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309 , 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018). Substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *see K.K.*, 2018 WL 1509091, at *4.

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists

only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to

4

scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518. In assessing whether the record is fully developed to support an award of benefits, courts take a more liberal approach when the claimant has already faced long processing delays. *See*, *e.g.*, *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000). An award is "especially appropriate when "further administrative proceedings would simply prolong [Plaintiff's] waiting and delay his ultimate receipt of benefits." *Podedworny*, 745 F.2d at 223; *see Schonewolf*, 972 F. Supp. at 290.

  **B.** **Sequential Evaluation Process**

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §

5

404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in

the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

### III. ALJ DECISION AND APPELLATE ISSUES

Prior to the established disability onset date of July 28, 2017, Plaintiff was a younger individual age (defined as age 45–49); however, on July 28, 2017, her age category changed to that of an individual closely approaching advanced age (defined as age 50–54). R. 27 (citing 20 C.F.R. § 404.1563). Plaintiff met the insured status requirements of the Social Security Act through December 31, 2017. R. 18. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between April 1, 2015, her alleged disability onset date, and the date of the decision. *Id.*

At step two, the ALJ found that Plaintiff suffered from the following severe impairments since April 1, 2015, her alleged disability onset date: status post stroke in November of 2014, migraines, history of Lyme's disease, degenerative disc disease, and fibromyalgia. R. 19. The ALJ also found that Plaintiff's diagnosed impairment of anxiety and alleged impairment of depression were not severe. *Id.*

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 19–21.

At step four, the ALJ found that Plaintiff had the RFC to perform sedentary work subject to various additional limitations. R. 21–27. The ALJ also found that, since April 1, 2015, Plaintiff's alleged disability onset date, this RFC did not permit the performance of Plaintiff's past relevant work as a private sector executive and district sales manager. R. 26–

27.

At step five, the ALJ found that, prior to July 28, 2017, the date on which Plaintiff's age category changed, a significant number of jobs–*i.e.*, approximately 40,000 jobs as an addresser; approximately 34,000 jobs as an assembler; approximately 100,000 jobs as a document preparer–existed in the national economy and could be performed by an individual with Plaintiff's vocational profile and RFC. R. 27–28. The ALJ also found that, beginning on July 28, 2017, the date on which Plaintiff's age category changed, there were no jobs that existed in significant numbers in the national economy that Plaintiff could perform. R. 28. The ALJ therefore concluded that Plaintiff was not disabled prior to July 28, 2017, but that she became disabled on that date and continued to be disabled through the date of the decision. *Id*.

Plaintiff disagrees with the ALJ's findings at steps four and five and asks that the decision of the Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Brief,* ECF No. 8; *Plaintiff's Reply Brief*, ECF No. 14. The Commissioner takes the position that her decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1,* ECF No. 9.

## IV.   DISCUSSION

Plaintiff raises several different challenges to the ALJ's decision, including, *inter alia*, that the ALJ erred when crafting the RFC and when posing a hypothetical to the vocational expert that did not include all the limitations accepted by the ALJ. *Plaintiff's Brief*, ECF No 8; *Plaintiff's Reply Brief*, ECF No. 14. Plaintiff specifically argues, *inter alia*, that the ALJ erred

when crediting the opinion of reviewing state agency physician Jeannie Nunez, Psy. D., yet failing to account for all the limitations articulated by Dr. Nunez in the RFC and when failing to include those limitations in the hypothetical posed to the vocational expert. *Id*. This Court agrees.

A claimant's RFC is the most that a claimant can do despite her limitations. 20 C.F.R. § 404.1545(a)(1). At the administrative hearing stage, the administrative law judge is charged with determining the claimant's RFC. 20 C.F.R. §§ 404.1527(e), 404.1546(c); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's RFC, an ALJ must consider all the evidence. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). However, the ALJ need include only "credibly established" limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to choose whether to include "a limitation [that] is supported by medical evidence, but is opposed by other evidence in the record" but "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible").

In making his findings, an ALJ must evaluate all record evidence. *Plummer,* 186 F.3d at 433; *Cotter,* 642 F.2d at 704. The ALJ's decision must include "a clear and satisfactory explication of the basis on which it rests" sufficient to enable a reviewing court "to perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704‒05. Specifically, the ALJ must discuss the evidence that supports the decision, the evidence that the ALJ rejected, and explain why the ALJ accepted some evidence but rejected other evidence. *Id*. at 705‒06; *Diaz v.*

*Comm'r of Soc. Sec.*, 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."). Without this explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (citing *Cotter*, 642 F.2d at 705). Accordingly, "the ALJ still may choose whom to credit but 'cannot reject evidence for no reason or the wrong reason.'" *Sutherland v. Comm'r Soc. Sec.*, 785 F. App'x 921, 928 (3d Cir. 2019) (quoting *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000)); *see also Nazario v. Comm'r Soc. Sec.*, 794 F. App'x 204, 209–10 (3d Cir. 2019) ("We have also held that although the government 'may properly accept some parts of the medical evidence and reject other parts,' the government must 'provide some explanation for a rejection of probative evidence which would suggest a contrary disposition.'") (quoting *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994)); *Cotter*, 642 F.2d at 706–07 ("Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, . . . an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper.") (internal citation omitted).

In addition, the Court notes that state agency physicians are experts in Social Security disability programs. SSR 96-6p. "An ALJ may not ignore these opinions and must explain the weight given to them." *Neal v. Comm'r of Soc. Sec.*, 57 F. App'x 976, 979 (3d Cir. 2003). An ALJ may rely on a state agency physician's findings and conclusions even where there is a lapse of time between the state agency report and the ALJ's decision and where additional medical

evidence is later submitted. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2012) ("The Social Security regulations impose no limit on how much time may pass between a report and the ALJ's decision in reliance on it. Only where 'additional medical evidence is received that *in the opinion of the [ALJ]* . . . may change the State agency medical . . . consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing,' is an update to the report required.") (emphasis in original) (citations omitted); *Wilson v. Astrue*, 331 F. App'x 917, 919 (3d Cir. 2009) ("Generally, an ALJ is required to consider the reports of State agency medical consultants; however, there is no requirement that an ALJ must always receive an updated report from the State medical experts whenever new medical evidence is available.").

Here, at step four of the sequential evaluation, the ALJ found that since April 1, 2015, Plaintiff had the RFC to perform a limited range of sedentary work:

> After careful consideration of the entire record, the undersigned finds that since April 1, 2015, the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a); can occasionally climb ramps and stairs; can never climb ladders, ropes or scaffolds; can occasionally stoop, kneel, and crouch; can never crawl; can frequently handle and finger bilaterally; must avoid concentrated exposure to hazards; can perform simple, routine repetitive tasks; cannot interact with the public; and can occasionally interact with coworkers.

R. 21.

In making this finding, the ALJ considered the opinions of the reviewing state agency physicians, including the opinions of *inter alios*, Janet Anguas-Keiter, Psy.D., and Jeannie Nunez, Psy.D. R. 26. Dr. Anguas-Keiter conducted an initial review of Plaintiff's medical record on behalf of the state agency on October 14, 2016, R. 82−91, and opined, *inter alia*, that Plaintiff had no significant difficulty in her ability to recall, understand, and carry out complex instructions. R. 88. Dr. Anguas-Keiter also opined that Plaintiff had moderate limitations in her ability to maintain attention and concentration for extended periods, to perform activities within

11

a schedule, maintain regular attendance, and be punctual within customary tolerances, to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, to interact appropriately with others, and to adapt to workplace change and stress. R. 87–88. Dr. Anguas-Keiter concluded that Plaintiff was capable of completing simple, routine, tasks and some more complex tasks in a socially limited setting. R. 88.

Dr. Nunez reviewed Plaintiff's medical record upon reconsideration for the state agency on March 16, 2017. R. 101–10. Dr. Nunez agreed with Dr. Anguas-Keiter that Plaintiff had moderate limitations in her ability to maintain attention and concentration for extended periods and to complete a normal workday and workweek without interruptions from psychologically based symptoms, to perform at a consistent pace without an unreasonable number and length of rest periods, to interact appropriately with others, and to adapt to workplace change. R. 109–10. However, Dr. Nunez disagreed with Dr. Anguas-Keiter that Plaintiff had a moderate limitation in her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, opining instead that Plaintiff was not significantly limited in this functional area. R. 109. In addition, unlike Dr. Anguas-Keiter, Dr. Nunez opined that Plaintiff had moderate limitations in her ability to understand and remember detailed instructions. R. 108–09. In explaining Plaintiff's capabilities and limitations in her ability to maintain sustained concentration and persistence, Dr. Nunez stated as follows:

> CPP: Clmt should be able to carry out simple instructions but clmt may have moderate difficulties in ability to carry out detailed instructions. Clmt may have moderate difficulties in maintaining concentration and attention. Clmt can perform activities w/in a schedule, sustain ordinary routine w/out supervision and make simple work related decisions. Clmt may have moderate difficulties completing a normal workweek w/out interferes from psych symptoms.

12

R. 109. Under the heading entitled "MRFC – Additional Explanation[,]" Dr. Nunez continued: "The claimant retains the ability to mentally perform at the level cited and discussed in this MRFC. Claimant can be expected to perform simple and repetitive tasks and to meet the basic mental demands of work on a sustained basis despite any limitations resulting from identified MDIs." R. 110.

In his written decision, the ALJ considered the opinions of these state agency reviewing physicians as follows:

> In October of 2016, Janet Anguas-Keiter, Psy.D., reviewed the medical evidence for DDS and advised that the claimant can recall, understand, and carry out complex instructions; has moderate difficulty maintaining concentration for extended periods; has moderate difficulty interacting appropriately with others; has moderate difficulty adapting to workplace change and stress; and is capable of completing simple, routine tasks and some more complex tasks in a socially limited setting (Ex. 1A). In March of 2017, Jeannie Nunez, Psy.D., agreed with Dr. Keiter's opinion (Ex. 4A). This is supported by the claimant's improvement with treatment and therapy, the negative clinical and mental signs, her performance on tests, her performance in clinical assessments and therapy, and her activities. The undersigned gives it consideration [sic][3] weight.

R. 26.

The ALJ having characterized Dr. Nunez' opinions as agreeing with those of Dr. Anguas-Keiter, it is unclear to this Court whether the ALJ intended to accord considerable weight to both opinions or to only those of Dr. Nunez. If to both, the ALJ inexplicably failed to accommodate Dr. Anguas-Keiter's opinion that Plaintiff was moderately limited in her ability to maintain steady daily and weekly work attendance. If the ALJ intended to accord considerable weight to only the opinions of Dr. Nunez, the ALJ failed to incorporate into the RFC that doctor's opinion that Plaintiff was moderately limited in her ability to maintain concentration for extended periods

---

[3] The Court understands that the ALJ mistakenly typed "consideration" instead of "considerable."

and to complete a normal workweek. Plaintiff contends that the failure to incorporate these limitations into the RFC is not harmless because the vocational expert testified that an individual who is on task 90 percent or less of the workday or who is absent from work two or more days per month could not engage in competitive employment. *Plaintiff's Reply Brief*, ECF No. 14, p. 9 (citing R. 71); *Plaintiff's Brief*, ECF No. 8, p. 18.

The Court concludes that this issue requires remand. As a preliminary matter, the Court notes that the ALJ erred in stating that Dr. Nunez agreed with Dr. Anguas-Keitler's opinions; in fact, the doctors' opinions differed in some respects as noted above. R. 26, 86–87, 108–109. In addition, although the ALJ assigned considerable weight to Dr. Nunez's opinions, it is unclear whether he intended to assign the same weight to Dr. Anguas-Keitler's opinions. R. 26 (noting that Dr. Nunez "agreed with" Dr. Anguas-Keitler and that "[t]his is supported by" the evidence and that "[t]he undersigned gives *it* consideration [sic] weight") (emphasis added). Moreover, the ALJ failed to expressly acknowledge certain limitations articulated by the doctors, including Dr. Anguas-Keitler's opinion that Plaintiff had moderate limitations in her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, and the opinion of both Dr. Anguas-Keitler and Dr. Nunez that Plaintiff was moderately limited in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods. R. 26, 87, 109. Notably, the ALJ never explained why he implicitly rejected these limitations, nor does the RFC found by the ALJ contain any accommodations for these limitations. R. 21, 26. Although an ALJ is free to weigh the medical opinions in the record and to determine whether and to what extent those opinions are to be credited, an ALJ must in all events explain his reasoning in that regard. *Cotter*, 642

14

F.2d at 704–05; *Fargnoli,* 247 F.3d at 42; *Morales*, 225 F.3d at 317; *see also Jones,* 364 F.3d at 505 (providing that an ALJ's decision must contain "sufficient development of the record and explanation of findings to permit meaningful review"). Similarly, an ALJ may not reject evidence for no reason or the wrong reason. *Sutherland*, 785 F. App'x at 928. Where, as here, the ALJ fails to clearly articulate the weight accorded the opinions of all the state agency consultants and where the ALJ appears to have, without explanation, rejected certain restrictions articulated by those experts, the Court cannot conclude that substantial evidence supports the ALJ's findings. *See Cotter*, 642 F.2d at 704–05; *Fargnoli,* 247 F.3d at 42; *Morales*, 225 F.3d at 317; *Sutherland*, 785 F. App'x at 928. Moreover, the ALJ's failure to include in Plaintiff's RFC—or to explain the omission from Plaintiff's RFC—limitations relating to moderate limitations in Plaintiff's abilities to perform activities within a schedule, to maintain regular attendance, to be punctual within customary tolerances, to complete a normal workday and workweek without interruptions from psychologically based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods cannot be viewed as harmless. *See H.G. v. Comm'r of Soc. Sec*., No. CV 20-7560, 2021 WL 3706724, at *2–3 (D.N.J. Aug. 20, 2021) (remanding where "the ALJ overlooked a key finding" by reviewing state agency physicians, namely, that the plaintiff has a moderate limitation to the ability to the ability to perform activities within a schedule, maintain regular attendance, and to be punctual within customary tolerances, and that "the reviewers agreed that Plaintiff has a moderate limitation to the ability to complete a normal workday and workweek without interruptions from psychologically-based symptoms"); *Moeller v. Kijakazi*, No. 1:20-CV-00571, 2021 WL 3207247, at *8–9 (M.D. Pa. July 29, 2021) (remanding case where "it is unclear how the ALJ accounted for Dr. Murphy's opinion that Ms. Moeller is moderately limited in her 'ability to complete a normal workday and workweek

15

without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods'" and finding that if the ALJ had included this limitation in the RFC, "it could have made a difference as to whether Ms. Moeller can engage in sedentary work. It also could have altered the vocational expert's analysis of the type of work Ms. Moeller can perform") (internal citations omitted); *Taylor v. Comm'r of Soc. Sec.*, 83 F. Supp. 3d 625, 627–28 (M.D. Pa. 2015) (remanding where the ALJ "seemingly adopted some of the limitations suggested by Drs. Mrykalo and Kelsey into his RFC and did not adopt others, without explanation" such as "the ALJ does not make any mention of the finding that plaintiff had moderate limitations in his ability to complete a normal workday and workweek without being interrupted by psychological symptoms and to perform at a consistent pace without an unreasonable number of rest periods" and finding that "[b]ecause there is not an account of his reasoning as to these opinions, there is no way for the court to determine whether they should have been included in the RFC and consequently affected the type of work that the ALJ determined plaintiff would be able to perform"). It is true, as the Acting Commissioner contends, that an ALJ need include in the RFC only credible functional limitations and that "[i]t is completely appropriate for the ALJ to disregard vocational expert testimony in response to limitations he does not accept." *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 9, pp. 22–23. However, the ALJ's failure to explain his reasoning in this regard requires remand for the reasons already discussed.

      This Court therefore concludes that the decision of the Commissioner must be reversed, and the matter must be remanded to the Commissioner for further consideration of the opinions of the state agency reviewing psychologists, Janet Anguas-Keiter, Psy.D., and Jeannie Nunez, Psy.D., the RFC determination, and the work, if any, that Plaintiff was able to perform prior to

July 28, 2017. Remand is appropriate, moreover, even if further examination of those opinions again persuades the Acting Commissioner that Plaintiff is not entitled to benefits; that determination is for the Commissioner—not this Court—to make in the first instance. *Cf. Zuschlag v. Comm'r of Soc. Sec. Admin.*, No. 18-CV-1949, 2020 WL 5525578, at *8 (D.N.J. Sept. 15, 2020) ("On remand, the ALJ may reach the same conclusion, but it must be based on a proper foundation."); *Jiminez v. Comm'r of Soc. Sec.*, No. CV 19-12662, 2020 WL 5105232, at *4 (D.N.J. Aug. 28, 2020) ("Once more, the ALJ did not provide an adequate explanation that would enable meaningful review, and the Court once more cannot determine what role lay speculation played in the ALJ's rejection of this detailed functional assessment from Dr. Marks.").[4]

## V.  CONCLUSION

For these reasons, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings consistent with this *Opinion and Order*.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

Date:  September 13, 2021                   *s/Norah McCann King*
                                             NORAH McCANN KING
                                             UNITED STATES MAGISTRATE JUDGE

---

[4] Plaintiff asserts a number of other errors in the Commissioner's final decision. Because the Court concludes that the matter must be remanded for further consideration of the state agency opinions of Dr. Anguas-Keiter and Dr. Nunez, the RFC determination, and whether Plaintiff can perform other work in the national economy prior to July 28, 2017, the Court does not consider those claims.